IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Tabitha S. Batey, | ) | Case No.: 05-42864-BGC-13 |
| Debtor. | ) | |
| Tabitha S. Batey, | ) | |
| Plaintiff, | ) | |
| vs. | ) | AP No.: 05-40230-BGC-13 |
| Sports Car Center, Inc., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The matter before the Court is the <u>Complaint</u> filed on September 15, 2005. Through this complaint, the plaintiff seeks to recover damages pursuant to section 362(h) of the Bankruptcy Code, 11 U.S.C. § 362(h), for the defendant's alleged willful violations of the automatic stay.

After notice, a trial was held on December 7, 2005. The plaintiff, Ms. Tabitha Batey, and her attorney, Mr. Frank LaBudde, appeared at the hearing. No one appeared for, or on behalf of, the defendant.

The matter was submitted on the testimony of Ms. Batey and Ms. Sherry Morgan; the record in this adversary proceedings; and the record in Bankruptcy Case No. 05-42864-BGC-13.

### I. FINDINGS OF FACT

Ms. Batey filed a Chapter 13 petition on August 25, 2005. She did not file any schedules, or statement of affairs, or Chapter 13 plan summary with her petition. She did, however, file a matrix on which she listed the names and addresses of her creditors. While the defendant is listed on the matrix, the only address given for the defendant is "Albertville AL 35950."

On August 30, 2005, Ms. Batey filed her bankruptcy schedules, statement of affairs, and Chapter 13 plan summary. On her schedule of personal property, she listed a 1996 Dodge Stratus automobile. She assigned a value of $950 to that vehicle.

On her schedule of creditors holding secured claims, she listed a debt owed to the defendant in the amount of $2,193 and indicated that the Stratus stood as collateral for the debt. The address that appears on the schedule for the defendant is "1493 Whitesville Road, Albertville, AL 35950." In her Chapter 13 plan summary, she proposed to pay the secured portion of the defendant's debt, (which she estimated to be $1,243) over a period of 60 months with interest at the rate of 6 percent per annum.

On September 1, 2005, Ms. Batey's attorney informed the clerk's office by letter that the defendant's correct address is "1493 Whitesville Road, Albertville, AL 35950." On September 6, 2005, the clerk's office notified Ms. Batey that the notice of the first meeting of creditors in this case, (the Section 341 notice), which had originally been mailed to the defendant had been returned by the postal service as undeliverable. On September 12, 2005, Ms. Batey's attorney filed a document entitled "Certificate of Service," in which he certified that, on August 30, 2005, he mailed a copy of the Chapter 13 plan summary to the defendant at "1493 Whitesville Road, Albertville, AL 35950," and that, on August 31, 2005, he mailed a copy of the 341 notice which had been generated by the Court to the defendant at the same address. It is apparent from those facts that more probably than not, the defendant did not receive written notice of Ms. Batey's case until some time after August 31, 2005, and therefore was not aware of the automatic stay which arose in this case until sometime after August 31, 2005.

Ms. Batey testified that when she filed her Chapter 13 case she owed approximately $2,100 to the defendant for the purchase of a 1996 Dodge Stratus automobile. She said that it was her intention, when she filed her case, to keep the car and pay the debt owed on it through her Chapter 13 case.

According to Ms. Batey, a person who she identified as "Mr. Morgan," (someone she described as one of the defendant's three owners,) came to her house to repossess the car on August 31, 2005. At that time she was in the process of leaving to go to her mother's house to borrow her mother's car to drive to work because the Stratus did not run because of mechanical problems. She told Mr. Morgan that she was in debtor's court and gave him the name of her attorney. He told her that he was going to get the car nonetheless. Ms. Batey then called her attorney's office and spoke with one of his employees, Ms. Sherry Morgan. Ms. Morgan spoke with one of the men who had accompanied Mr. Morgan. According to Ms. Batey, the men still refused to leave, which prompted Ms. Batey to call the police. Upon being informed that the police had been summoned, the men left.

Ms. Batey said that the men came back the very next day, on or around September 1, 2005, while she was at work and repossessed the vehicle. When it was repossessed, the vehicle contained around $200 worth of compact disks, as well as a

2

$40 portable CD player, a $20 child's car seat, and around $20 in change, all of which belonged to Ms. Batey. She said that she has not seen either the vehicle or her personal items since they were taken. And she represented that she has not received any communication from the defendant regarding either the car or her personal items.

The car was, in Ms. Batey's estimation, worth between $900 and $1,000 when it was repossessed. It was inoperable and in need of repair. She had already spent almost $900 on repairs to the vehicle. Her intention at the time was to have the car repaired and to keep it. However, she has since revised her intentions. For now, she does not want the car because the necessary repairs will be costly and, according to Ms. Batey's mechanic, "the car's not worth being fixed."

According to her testimony, Ms. Batey did not miss any work as a result of the car being repossessed by the defendant because she had the use of her mother's car and her fiancé's truck. She was however inconvenienced because of the repossession. She was required to change to the late shift at work so she could borrow her fiancé's truck.

Ms. Sherry Morgan, who is employed by Ms. Batey's attorney, testified that, as a matter of office policy she keeps notes of any conversations that she has with creditors. Her notes reflect that she received a telephone call from Ms. Batey on August 31, 2005. Ms. Batey told her that someone from Sports Car Center, Inc. was at her home for the purpose of picking up the car. Ms. Morgan spoke with a man, to whom Ms. Batey had apparently handed the telephone. Ms. Morgan testified that the man told her that he worked for the defendant, but did not identify himself by name. She told the man that Ms. Batey had filed a bankruptcy petition on August 25, 2005; that she had received the official notice of the case that day from the court; and that he should receive a similar notice within a couple of days. Ms. Morgan testified that she offered to send that proof to the defendant by facsimile. The man replied that no one was present at the company's office to receive it. The call was then terminated.

Ms. Morgan testified that Ms. Batey called her later and told her that the men were still at her house and that she had called the police. Later that day, Ms. Morgan placed a copy of the notice of the First Meeting of Creditors for this case in the mail to the address she had for the defendant. That mail has not been returned. The next day, on September 1, 2005, she received another call from Ms. Batey, who informed her that the defendant's employees had returned and picked up the car.

Ms. Batey filed her Complaint in the present adversary proceeding on September 15, 2005. The next day, on September 16, 2005, she filed an Amended Complaint. In a certificate of service which he filed on September 20, 2005, Ms. Batey's attorney represented that he had served both a copy of the Complaint and the Amended Complaint by regular mail on the defendant at two separate addresses: "1493 Whitesville Road, Albertville, AL 35950," and "Attention: Joey Morgan, Registered Agent, 6079 U.S. Hwy 431 S., Albertville, AL 35950." Enigmatically, Ms. Batey's

3

attorney filed a second certificate of service on September 26, 2005, in which he represented that he had again served both a copy of the <u>Complaint</u> and the <u>Amended Complaint</u> by regular mail on the defendant at "Attention: Joey Morgan, Registered Agent, 6079 U.S. Hwy 431 S., Albertville, AL 35950."

The record reflects that on November 2, 2005, the clerk's office mailed a notice of a pretrial conference to be held on November 9, 2005, at 11:00 a.m. to the defendant at "Attention: Registered Agent, Joey Morgan, 6079 U.S. Hwy 431 S., Albertville, AL 35950-2005." Since that notice was sent from Reston, Virginia, by the bankruptcy court's designated mailing agent, Enterprise Systems Incorporated, there is no way of knowing whether or not it reached the defendant before the time set for the pretrial conference, and it cannot be assumed that it did. In any event, no one attended the pretrial conference for or on behalf of the defendant.

At the pretrial conference, the Court directed the bankruptcy court clerk to set this proceeding for trial on December 7, 2005, at 12:00 p.m., and to mail a notice of the trial setting to the defendant. Accordingly, the bankruptcy court clerk set this proceeding for trial on December 7, 2005, at 12:00 p.m., and mailed a notice of the trial setting to the defendant at "Attention: Joey Morgan, Registered Agent, 6079 U.S. Hwy 431 S., Albertville, AL 35950."

On November 2, 2005, as a result of the defendant's failure to answer her complaint and amended complaint or otherwise defend, Ms. Batey filed an application with the bankruptcy court clerk for entry of default with a supporting affidavit. Pursuant to that application, the bankruptcy court clerk entered the defendant's default on the record pursuant to Bankruptcy Rule 7055. The entry of default was mailed on November 4, 2005, by the clerk's office to the defendant at "Attention: Joey Morgan, Registered Agent, 6079 U.S. Hwy 431 S., Albertville, AL 35950."

As the foregoing recitation of this adversary proceeding's procedural history clearly indicates, the defendant has been sent ample notice of this case but has, despite that, elected not to answer, defend, or otherwise appear to represent its interests.

## II. APPLICABLE LAW

Section 362(h) of the Bankruptcy Code provides, "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). That section requires that in order for an award of damages to be made to an individual debtor for a stay violation, the proof must show that the debtor was injured by the stay violation and that the defendant's violation of the stay was willful. A violation of the automatic stay is a "willful violation" if, "the violator (1) knew of the automatic stay and (2) intentionally committed the violative

4

Case 05-40230-BGC    Doc 17    Filed 03/07/06    Entered 03/07/06 09:53:49    Desc Main
Document      Page 4 of 9

act, regardless whether the violator specifically intended to violate the stay." <u>Jove Eng'g, Inc. v. Internal Revenue Serv.</u>, 92 F.3d 1539, 1555 (11th Cir. 1996).

Section 362(h) authorizes an award of punitive damages for stay violations only in "appropriate circumstances." "Appropriate circumstances" has been interpreted to require that the violator's acts be egregious, vindictive, malicious, or accompanied by bad faith. "[E]gregious, intentional misconduct on the violator's part is necessary to support a punitive damages award." <u>United States v. Ketelson (In re Ketelson)</u>, 880 F.2d 990, 993 (8th Cir. 1989). "An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h)." <u>Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)</u>, 902 F.2d 1098, 1105 (2nd Cir. 1990). "[O]nly egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay of 11 U.S.C. § 362." <u>Davis v. Internal Revenue Serv.</u>, 136 B.R. 414, 424 (E.D. Va. 1992).

### III. CONCLUSIONS OF LAW

#### A. Violation of the stay

Based on the evidence, the Court concludes that the defendant intentionally violated the automatic stay.

Ms. Batey testified that on August 31, 2005, after she filed her bankruptcy petition and before the car was repossessed by the defendant's agents, she personally told Mr. Morgan, one of the defendant's owners, and the men that were with him, that she had filed bankruptcy. Moreover, she testified that the defendant, by and through its agents, repossessed the car on September 1, 2005. In addition, Ms. Morgan specifically testified that on August 31, 2005, she spoke with one of the men who had accompanied Mr. Morgan and told him about Ms. Batey's bankruptcy case. Based on that unrefuted testimony, the Court must conclude that the defendant was on notice that Ms. Batey was in bankruptcy when it repossessed her car. Consequently, its repossession of the car violated the automatic stay in Ms. Batey's bankruptcy case. And because it knew about the bankruptcy case, and therefore knew about the automatic stay, the violation, in addition to being willful, was intentional.

#### B. Damages

Since the defendant's stay violations were intentional, not merely willful, Ms. Batey may be awarded both compensatory and punitive damages, to the extent either or both are supported and justified by the evidence.

5

### 1. Compensatory Damages

Ms. Batey testified that she lost approximately $280 in personality as a result of the illicit repossession. She is, of course, entitled to recover that amount. But she admittedly suffered no lost wages as a result of the repossession because she had the use of her mother's car and her fiance's truck. And since she does not want the car and, according to the sum of her testimony, the car is essentially worthless when the cost of needed repairs is considered, she is not entitled to recover anything for the value of the car.

The Court does not suggest that Ms. Batey is not entitled to some compensatory damages for the repossession and detention of the car by the defendant. It does, after all, belong to her and she is entitled to possession of it, which she was deprived of, and no doubt suffered some degree of inconvenience as a result. In fact, she specifically testified that she was substantially inconvenienced as a result of the repossession because she had to change to the late shift at work to borrow her fiance's truck. Had the car not been repossessed, she would, according to her testimony, have had it repaired and avoided that inconvenience. She is, therefore, entitled to be compensated in some respect for being deprived of the vehicle, or more appropriately, the loss of use of the vehicle, even though such compensation will be difficult to quantify.

But, based on the evidence, the Court finds that for: (1) the loss of the use of the car, as well as the time, trouble, and inconvenience Ms. Batey suffered, although she eventually abandoned the car; and (2) to vindicate her rights under the stay, Ms. Batey will be awarded compensatory damages in the amount of $500.

Therefore, Ms. Batey's total award of compensatory damages will be $780.

### 2. Punitive Damages

As indicated before, the defendant intentionally violated the stay by: (1) repossessing the car despite having received verbal notification of Ms. Batey's bankruptcy from both Ms. Morgan and Ms. Batey; and (2) retaining the vehicle after having been given notice of the pendency of Ms. Batey's bankruptcy. Moreover, the defendant's agents, specifically Mr. Morgan, engaged in a face-to-face confrontation with Ms. Batey; expressly avowed to obtain possession of the car regardless of the stay; and obstinately refused to leave Ms. Batey's premises, and the sanctity of her home, until threatened with the probability of being forced to do so by police. The defendant's actions, vicariously by and through its agents, can be characterized to some degree, albeit not substantially, as hostile, egregious, vindictive, malicious, abusive, and belligerent.

Individual creditors cannot decide whether, or when, to observe the automatic stay. There must therefore be consequences for those who intentionally disregard it, otherwise, they may presume they are free to repeat their actions, events that would of

course lead to an erosion of the very protection that the stay was intended to provide. An award of some amount of exemplary damages is, therefore, warranted.

In fashioning a punitive damage award, the Court is guided by the principal, "The Due Process Clause of the [Fifth] Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a defendant and creates substantive limits on the amount of punitive damages a [bankruptcy court] may impose." Kemp v. American Telephone & Telegraph Co., 393 F.3d 1354, 1362 (11th Cir. 2004) (parentheticals added).[1] To avoid the imposition of an award that is constitutionally excessive, this Court must consider three guideposts. Those are: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id.

### a. Reprehensibility

Writing for the Court of Appeals for the Eleventh Circuit in Kemp, Circuit Judge Rosemary Barkett explained, "The reprehensibility of a defendant's conduct is '[p]erhaps the most important indicium of the reasonableness of a punitive damages award.' " Id. at 1363 (quoting BMW of N. Am., Inc., v. Gore, 517 U.S. 559, 575 (196)). Circuit Judge Barkett goes on to explain that in assessing the reprehensibility of a defendant's conduct, several factors must be considered. Those include:

> (1) whether the injury caused physical harm; (2) whether the tortious conduct demonstrated an indifference to, or a reckless disregard of, the health or safety of others; (3) whether the target was financially vulnerable; (4) whether the conduct involved repeated actions; and (5) whether the harm was the result of intentional malice, trickery, or deceit.

Id.

As explained above, the defendant's conduct, in repossessing and retaining the car post-petition, was, relatively speaking, reprehensible, but not substantially so. It caused no physical harm. It did not clearly demonstrate a substantial indifference to, or a reckless disregard of, the health or safety of others. It did not involve substantial malice, trickery or deceit.

But the physical intimidation inherent in being confronted by several people expressly intent on taking property against her will, as well as the unwillingness of those to leave her property until threatened with the police, necessarily implicated and infringed on Ms. Batey's right to be secure in her person and home, and therefore her

---

[1] This quote was written originally in terms of the Fourteenth Amendment because the issue of punitive damages was being discussed in regards to a state action.

7

safety. That demonstrates a certain degree of callousness. Hence Ms. Batey's call for help to the police. In addition, repeated actions were involved, some on August 31, 2005, and others on September 1, 2005. Ms. Batey was financially vulnerable. Furthermore, the defendant's conduct was intentional and exhibited an express contempt for Ms. Batey's right to maintain possession of the car under section 362(a) of the Bankruptcy Code. And the defendant's retention of the car following repossession was at least continuous, if not repetitive.

### b. Disparity

In regard to the second punitive damages guidepost, that is the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, Judge Barkett explains, " 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' " Id. (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003)). But she adds, "as the Supreme Court has explained, in some situations a higher ratio may be appropriate where a 'particularly egregious act has resulted in only a small amount of economic damages.' " Id. (quoting Campbell, 538 U.S. at 425).

In this case, the defendant's conduct, although reprehensible, was not "particularly egregious." Consequently, the punitive damages award in this case should not exceed the compensatory damages awarded by greater than a single-digit ratio.

### c. Comparison

The final guidepost, which involves a comparison between the punitive damages to be awarded and civil penalties authorized or imposed in comparable cases, is, according to Judge Barkett, "accorded less weight in the reasonableness analysis than the first two guideposts...." Id. at 1364. Indeed, there is no statutory provision for awarding civil penalties for stay violations, and the Court is unable to think of any cases in which civil penalties are authorized or imposed which are analogous to cases involving violations of section 362(a).

### d. Conclusion as to Punitive Damages

Having considered the applicable guideposts, the Court is of the opinion that a punitive damages award of $3,500 will serve adequately to both punish the defendant and to make it consider the stay in future cases. Because the conduct of its agents was not overly egregious, a greater award is unwarranted. And the amount of the award is approximately five times the compensatory damages awarded, which falls well within the Supreme Court's single-digit multiplier parameters.

### 3. Attorney Fees

Reimbursement for attorneys fees rendered necessary by a creditor's stay violation is one element of "actual damages" that may be awarded pursuant to section 362(h) to a debtor injured by that violation. However, Ms. Batey did not testify that she has actually paid any fees to her attorney for the work that he performed in connection with this adversary proceeding; that she owes her attorney any fees for that work; or that she is seeking reimbursement of any such fees from the defendant.

No evidence was submitted that Ms. Batey has paid or incurred any obligation to pay fees to her attorney for the work he performed in connection with this adversary proceeding. Furthermore, Ms. Batey's attorney did not file a fee application. And he did not suggest that Ms. Batey has paid him for the work that he has performed in connection with this adversary proceeding; that she owes him any fees for that work; or that Ms. Batey is seeking reimbursement of any such fees from the defendant.

Therefore, the record is void of any evidence that Ms. Batey suffered "actual damages" in the form of attorneys fees as a result of the defendant's stay violation. Consequently, an award of attorneys fees in this case pursuant to section 362(h) is unwarranted.

## IV. CONCLUSION

Based on the above, the Court concludes that the defendant intentionally and willfully violated the automatic stay. Therefore, the debtor is entitled to damages totaling $4,280 against the defendant. That amount is comprised of $780 in compensatory damages and $3,500 in punitive damages. A separate order will be entered in conformity with this memorandum opinion.

Done this the 7th day of March, 2006.

/s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge


BGC:sm

cc:  Sports Car Center, Inc.
     Frank LaBudde, attorney for the debtor
     Linda Gore, Chapter 13 trustee